UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                            CRIMINAL NO. 17-cr-20826

v.                                         HON. STEPHEN J. MURPHY

RONDELL LOWELL COOK,

       Defendant.

---

### United States' Sentencing Memorandum

---

*"Go ahead and leave me if you want to.  Block me. First pic is going to your mother, then to [Dept. of Children and Families]. . . You think I'm playing?  I have nothing else to lose."  (10.28.17, 20:33).*

Defendant Rondell Cook—a two time sex offender—spent months using emotional abuse to coerce a child to send sexually graphic materials to him.  Then, he showed up in her hometown for sex, complete with a whip, paddle, gag, and a dog collar.  For the reasons stated in this memorandum, the government believes a sentence of **540 months'** imprisonment is "sufficient, but not greater than

necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008).

### I. Facts and Procedural History

In the first week of December, 2017, MV-1, a fifteen-year-old girl, was reported missing to police. The only information that MV-1's family had was that MV-1 was overheard talking on the phone with someone, asking: "Is the room ready?" Van Buren Township Police went to work, obtaining MV-1's cell phone location, which returned to a Super 8 Motel in Belleville, Michigan.

When police arrived at the hotel, they learned that MV-1 was in room 112 with a man. They knocked on the door, and the Defendant answered. He was shirtless, shoeless, belt undone, and his pants zipper was completely down. A pair of men's underwear lie on the floor. Then, officers found MV-1. She was in the bathroom, hiding. She was clothed, but was also wearing a black leather dog collar. Observed in the room by VBTPD officers were also a black leather whip, black leather paddle, black leather wrist/leg restraints, ball gag, black leather leash, and a black rope. The bed located next to the window was observed to be messy, with the blankets and sheets tossed about on the bed and partially on the ground.

While this was where the Defendant's criminal sexual behavior toward MV-1 ended, it was not where it began. The Defendant spent the prior year grooming MV-1 for when he would finally take full advantage of her—mind and body—by

traveling over 24 continuous hours on a Greyhound bus in order to engage in illegal sex acts with her.

> **A.  Cook begins to groom MV-1 online, coercing her into sending sexually explicit images and videos.**

In January 2017, Cook and MV-1 found each other online. Cook lied to MV-1 by telling her he was 17 years old. He was actually 27. MV-1 was 15, and in the eighth grade. For the next eleven months, Defendant continuously and consistently took control of this child, making her believe that they were in love with each other. In the span of just three and half months, the pair exchanged over 29,000 text messages. This averages out to almost 300 text messages every single day, at all hours of the day and night.

> **(1)  Defendant gains power and control over MV-1.**

From Defendant's perspective, the text messages had a clear goal: entice and coerce this child to engage in sexually explicit conduct for the purpose of making videos and pictures for him. But he needed to work at it, to ensure her compliance. Defendants, like Cook, who reach out to sexually exploiting children, know that they need to create a power position, often using combinations of flattery, threats, and guilt. For example:

Cook: Think about things that make you happy like our lives together and how great it's going to be when I put that ring on your finger.[1]

. . . .

Cook: I miss you too kitten, so much.

(09.21.17, 21:43).

Defendant manipulated and isolated MV-1. He scolded her if she failed to timely answer texts, or communicate with him on his time. For example, when Defendant learned that MV-1 was talking with a boy on her bus ride home, he warned her: "Keep your conv[versations] with him friendly only and your contact to only on the bus . . . You are not texting him after 9 p.m." (09.09.17, 17:26).

Defendant gave her advice on diet and exercise. He kept careful watch on her schedule, timing her movements from school to home, and threatening her when he decided she was lying to him about mundane details, such as failing to text him because she was asleep: "YOU'RE LYING TO THE WRONG FUCKING PERSON WHEN YOU LIE TO ME . . ." (10.05.17, 11:55). He even demanded that she provide him with her login and password information to all her social media

---

[1] Many of the text messages contain spelling errors, and/or shorthand. For ease of reading, undersigned counsel has corrected spelling errors in the text messages where appropriate. The full text of all the texts are available at the Court's request.

accounts. (10.21.17, 7:44). Even that was followed up with his demand for screenshots of her private messages to others. (10.21.17, 10:53).

> **(2)    Defendant teaches MV-1 to equate sexually explicit images with love.**

Defendant displayed MV-1's name in his phone as "Da Wifey." In turn, MV-1 called Defendant, "Husband da." This is yet another tool used by sexual predators to groom children. In MV-1's world, she believed Defendant loved her like a spouse. But, he didn't. As the text messages demonstrate, Defendant told MV-1 whatever he thought she wanted to hear in order to manipulate her into feeding into his sexual desires:

> Cook:    Your awesomest has made me see my awesome . . . you have been awesome the moment you were born babe.
>
> MV-1:    I'm so happy to have you. I love you so much.
>
> Cook:    I love you too bae [*before anyone else, girlfriend*] . . . You should send me some naked pics now.

(08.08.17, 5:57 – 6:15). These chats go on and on and on, convincing MV-1 that the appropriate way to show a man love and affection is to perform sex acts on camera:

> MV-1:    I'll do whatever I have to do to keep you in my life. I don't wanna argue no more. I don't wanna lie no more. I just want us to be happy together . . . so tell me what I can do to help us become stronger.

> Cook: You gotta text me first sometimes with things to talk about. Text me throughout a day. Send me pics and videos without me asking you to. Send me freaky texts during the day.

(08.26.17, 21:42 – 21:46). And MV-1 complied. Sometimes, they live streamed a chat where MV-1 would perform sex acts on herself, such as penetrating herself with objects, and other times, MV-1 would send images and videos through KIK, email, or other online platforms.

### (3) Defendant uses threats and guilt to maintain power and control.

In order to maintain his control over MV-1, Defendant used a mix of threats, and guilt, constantly making MV-1 guess whether he was happy with her or mad at her. This emotional abuse would put any adult in a pattern of confusion and pain, but for a child, who is not equipped to even recognize this sort of pattern, it is much, much worse. On many occasions, Defendant would make MV-1 think she did something wrong, turning the tables to force her to seek forgiveness. And of course, seeking to be in Defendant's good favor meant sending him sexually explicit materials:

> Cook: Wake up . . . This is what I be talking about.
>
> MV-1: I'm awake. I'm sorry.
>
> Cook: I didn't wanna talk . . . so you can go back to sleep.
>
> MV-1: I'm not tired anymore.

| | |
|---|---|
| Cook: | When I come out there we are not doing nothing at all . . . and that's if I even come. |
| MV-1: | You already told me you won't come even though I want you to. I don't even know why you are mad. |
| Cook: | I bet you don't know why I'm mad. |
| MV-1: | No, I don't know why you're mad. |
| Cook: | Well, that's too bad. |

. . . . . .

| | |
|---|---|
| Cook: | You better send me what I asked for right now and I'm not reminding you of what I said send me [*sexually explicit material*] . . . And I bet you're okay with not talking to me for awhile when you got others to talk to. |
| MV-1: | I don't have anyone to talk to. |
| Cook: | I better get what I ask for.  I'm not gonna keep doing this, you sleep all fucking day on one of my 2 days . . . .[2]  Our Valentine's Day is cancelled.  You are not getting no dick; you are not getting shit from me until this shit changes, unless you are coming out here to me. |

---

[2] October 28, 2017 was a Saturday.  Defendant is referring to "my 2 days" as being able to have constant contact with MV-1 on the weekends because she is not in class.

| | |
|---|---|
| MV-1: | You know I can't come out here. I have no way out there and I have school. |

. . . .

| | |
|---|---|
| Cook: | I didn't ask you for much, but now I see I do ask you for too much so I should just stop asking you. I get off work and I gotta be over here jerking off by myself because my girl sleeping when she should be up taking care of me. Your man is over here horny as fuck, but you can't send him pics, voice notes, and a video because it's too late, right? |
| MV-1: | This is the problem every time when someone falls in love with me. I'm sorry I'm a bad girlfriend. I'm sorry if I turn out like the others. I'm sorry if I'm not who you wanted me to be. This is what happens when someone falls in love with a girl who knows nothing about love and just wanted to be loved and when I finally found someone to love me, all I did was hurt you. |
| Cook: | Your man's dick is hard and he is horny as fuck. Right now tell daddy you love him and take care of this situation right now. |

(10.28.17, 6:06 – 9:08).

### B. Cook travels to Michigan to sexually assault MV-1.

To prepare for his trip to Michigan to have sex with MV-1, Defendant educated her on sexual aids, promising that the first thing he would do is use a whip on her. ("I'm going to buy some hand cuffs and a whip." (10.14.17, 4:49)). And, of course, when police entered the hotel room, they encountered all this and more. Not only did Defendant make good on his promise to bring sadomasochistic type things to use on MV-1, but he had already placed a dog collar around her neck before the police showed up.

Defendant often used his promise of a trip to Michigan as both a sword and a shield in his dealings with MV-1. But when he finally showed up, he arranged a Lyft to bring her to the hotel. No doubt, this coward had no intention of meeting her mother, or any family member. Instead, he forced her to sneak around, and abandon her family without a word.

The records indicate that MV-1 was on her way to the Super 8 motel sometime after 3:00 that afternoon. Her text to Defendant indicating that she was "on my way," was received by Cook at approximately 4:15 p.m. Within a few hours, MV-1's mother reported her missing, the police were able to find her cell phone location, and rescued her from the location. But even in that short period of time, Defendant had MV-1 performing oral sex on him in the hotel room. No doubt, he was not there

to talk, or spend any time getting to know each other.  Indeed, Defendant's sole purpose of this visit was to force sadomasochistic-type sex acts on this child.

      **C.**      **Cook pleads guilty as a two-time sexual offender.**

On September 26, 2018, Defendant pleaded guilty to producing child pornography, under a Rule 11 plea agreement.  The United States has agreed to recommend that the state's sentence for criminal sexual conduct against MV-1 (78 – 188 months) to run concurrent with the sentence imposed on this case.  Because Defendant has a prior sexual offense conviction, his statutory minimum is enhanced to 25 years' imprisonment, and his statutory maximum is capped at 50 years. The presentence report calculated his guideline range to be life imprisonment, which was the same as the Rule 11 plea agreement.  Neither party objected to the guideline calculations.

This Court set sentencing for January 24, 2019, at 11:30 a.m.

**II.**      **The factors under 18 U.S.C. § 3553(a) warrant a 540 month sentence.**

      **A.**      **The nature and circumstances of the offense**

This defendant repeatedly took advantage of MV-1's vulnerabilities, including her young age, and enticed her into a twisted, online sexual relationship that eventually ended when he was literally caught in a sex act with the child.

This Defendant—a grown man with children of his own—spent hours upon hours psychologically abusing a child into thinking that he loved her, that he was

going to be with her forever, and that they were in a romantic relationship, all for the purpose of his own sexual gratification.

The entire purpose of Defendant's communications with MV-1 concerned his own sexual excitement.  He attempted to prime MV-1.  He made her produce pornographic videos, using incredibly graphic descriptions: "now send me a voice note apologizing to daddy and tell daddy how bad you wanna suck his dick and how bad you want him to fuck you.  And keep playing with that pussy." (10.24.17, 4:34).  He introduced this child to sexual acts, items, and concepts that no 15 year old should even know exist.

And when he was caught – he presented police with a pack of lies.  He claimed that MV-1 sent unsolicited images and videos to him, even though the text messages clearly belie this claim.  Undoubtedly, this is a serious offense, as evidenced by Congress' statutory mandate of twenty-five years' imprisonment.  And this Defendant has earned an extensive sentence for his behavior.

      **B.**    **History and characteristics of the defendant.**

Cook is a 28-year-old man.  He has claimed a problematic childhood, including an inconsistent allegation of physical abuse.  He is not married, but has fathered two children.  He was living in Connecticut at the time of this offense.  Notably, he was on probation when he was arrested.  A review of Defendant's criminal history is not only alarming, but quite telling.

This Defendant stands in stark contrast to other Defendants in child exploitation cases because of his criminal history. In 2006, he was convicted of robbery, after he stole another student's CD player. Not only did this conviction involve the use of force, he violated his probation two times. In 2007, Defendant, at age 18, impregnated a 15-year-old girl. He was convicted of criminal sexual conduct, and again, violated his probation.

In 2011, Defendant swung a kitchen knife at the mother of his child. He then grabbed her by the neck and dragged her out of the house. For that, he was convicted of assault. Three years later, Defendant was again involved in an act of violence involving his child's mother. In this instance, the pair argued over a custody agreement. When the police arrived, he turned his anger toward the police. He was convicted of interfering with an officer/resisting.

In 2015, less than a year after the police altercation, Defendant became upset that his ex-girlfriend was moving out of their apartment, and locked her in the bathroom. According to reports, Defendant kneed her in the mouth so hard that it knocked one of her teeth sideways. He refused to let her leave unless she physically fought him.[3] Defendant pulled a knife on the victim, causing another man that arrived on the scene to help, to pull out his (lawfully owned) pistol. Police broke up

---

[3] https://www.stamfordadvocate.com/news/article/Cops-Stamford-man-holds-ex-against-her-will-6319133.php

the fight. Defendant was convicted of unlawful restraint in the first degree. Connecticut courts placed him on probation toward the end of 2016. Defendant was on probation for this offense when he committed the criminal acts against MV-1.

### C. Seriousness of the offense, promotion of respect for the law, and just punishment for the offense.

As discussed, this is a serious offense. And Defendant should be punished accordingly. These children are particularly vulnerable because individuals like Defendant have easy access to them by downloading applications that are almost exclusively used by younger children, such as KIK and oovoo, the applications used in this offense.

As a society, we have set certain standards of conduct by which we must conduct ourselves. Particularly when it comes to protecting our children, we have decided, as a matter of law, that this kind of behavior is strictly prohibited. A sentence of 540 months would reflect the seriousness of this offense, promote respect for the law, and provide just punishment.

### D. Adequate deterrence and protection of the public.

Deterrence is a key component in discouraging future criminal behavior and protecting the public. This Defendant in particular, needs deterrence. His prior behavior demonstrates that he uses violence to get what he wants, without regard to anyone else.

The amount of time, energy, and effort Defendant invested in this crime is quite extensive. The victim of this crime, and her family must endure a pain that was thrust upon them by this Defendant's selfish acts. And the damage to MV-1 and her family will last forever. This defendant needs to be deterred.

**E.     Kinds of sentences available and the need to avoid unwarranted sentencing disparities.**

The defendant's guideline range is life. He has avoided a life sentence through plea negotiations, which limited his sentencing exposure to 25 – 50 years. But a sentence of 40 years is perfectly aligned with similarly situated defendants across the country.

In the Eastern District of Michigan, at least three prior sex offenders have received life sentences. *See United States v. Steven Demink*, 10-20676 (E.D. Mich. 2010) (defendant with no prior criminal convictions received life sentence from Judge Rosen based on his online conduct where he manipulated women to have sex with their children on camera for defendant); *United States v. Mario Asakevich,* 11-20343 (E.D. Mich. 2012) (Judge Cox sentenced repeat sex offender to life in prison for online enticement); *United States v. James Frazee*, 10-20082 (E. D. Mich. 2010) (Judge Lawson sentenced defendant, a previously convicted sex offender who produced child pornography of a 14 year-old girl, to life in prison).

Other courts around the country have likewise imposed life sentences—or the equivalent of life sentences—against significant child pornography offenders. *See*

*U.S. v. Williams*, 2013 WL 6851125 (11th Cir. Dec. 31, 2013) (unpublished) (100 year sentence affirmed); *U.S. v. Goodale*, 2013 WL 6847032 (8th Cir. Dec. 30, 2013) (life sentence reasonable for defendant who sexually abused two boys); *U.S. v. Hamilton*, 2013 WL 6726953 (2d Cir. Dec. 23, 2013) (unpublished) (1800 month sentence affirmed after defendant pleaded guilty to 5 counts of production of child pornography, court stated "Nor are we persuaded that a life sentence in the case at bar overstates the seriousness of the offense given Hamilton's role in producing graphic child pornography by filming himself sexually abusing children as young as four years old."); *U.S. v. Hodge*, 729 F.3d 717 (7th Cir. 2013) (1380 month sentence reasonable for production and other child pornography crimes, including the abuse of a 9 year-old girl); *U.S. v. Herrick*, 2013 WL 275908 (6th Cir. Jan. 25, 2013) (unpublished) (1140 month sentence reasonable for three counts of production of child pornography for a Boy Scout camp director); *U.S. v. Boroczk*, 2013 WL 197709 (7th Cir. Jan. 18, 2013) (70 year production sentence reasonable); *U.S. v. Cannon*, 703 F.3d 407 (8th Cir. 2013) (840 months for sexual exploitation of a child upheld); *United States v. Miller*, 2013 WL 4256278 (5th Cir. Aug. 12, 2013) (unpublished) (upheld 70 year sentence for production and possession); *United States v. Snyder*, 425 Fed. Appx. 64 (2d Cir. 2011) (upholding a 75 year sentence for 5 counts of production of child pornography as substantively reasonable); *United States v. Castillo*, 2011 WL 2014943 (11th Cir. 2011) (upholding a sentence of 1,560

months (130 years) for 4 counts of production of child pornography and one count of possession of child pornography as substantively reasonable); *United States v. Sarras*, 575 F.3d 1191 (11th Cir. 2009) (affirming as reasonable a 100-year (1,200 months) sentence for a first-time offender who sexually abused a 13-year-old girl and produced pornographic images of the victim); *United States v. Johnson*, 451 F.3d 1239 (11th Cir. 2006) (upholding as reasonable a 140-year sentence for two counts of producing child pornography and one count of distribution); *United States v. Betcher*, 534 F.3d 820 (8th Cir. 2008) (upholding as reasonable a 750-year sentence for a first-time offender who had taken pornographic pictures of five 8- to 11-year-old girls, including two of his granddaughters).

These are just some examples of the sentences imposed on significant child pornography offenders. A 540-month sentence here would be in line—if not significantly lower—with other cases in this district, and around the country, dealing with prolific sex offenders. There is simply no sentence short of a life-equivalent that will meet the goals of 18 U.S.C. § 3553(a).

## III.  Conclusion

The government recommends a sentence of **540 months**' imprisonment.

Respectfully submitted,

MATTHEW SCHNEIDER,
United States Attorney

*s/Margaret M. Smith*
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
Phone:  (313) 226-9135
E-Mail: margaret.smith@usdoj.gov
Bar No. P71413

Dated:  January 16, 2019

## Certificate of Service

I hereby certify that on January 16, 2019, I electronically filed the Sentencing Memorandum for the United States with the Clerk of the Court of the Eastern District of Michigan using the ECF system, which will send notification of such filing to all counsel of record via electronic mail:

Stacey Studnicki
Attorney for Defendant

*s/ Margaret M. Smith*
MARGARET M. SMITH (P71413)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9135
E-Mail: margaret.smith@usdoj.gov